IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

RAYMOND GREGORY VERRET                                          PLAINTIFF

v.                                         CIVIL ACTION NO. 1:21-cv-93-HSO-MTP

COMMISSIONER OF SOCIAL SECURITY                                 DEFENDANT

REPORT AND RECOMMENDATION

Plaintiff Raymond Gregory Verret brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of a final decision of the Commissioner of Social Security

Administration denying his claim for disability insurance benefits.  Having considered the

parties' submissions, the record, and the applicable law, the undersigned recommends that the

Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

PROCEDURAL HISTORY

On February 4, 2019, Plaintiff applied for disability insurance benefits, alleging that he

has been disabled since February 1, 2014, due to "Renal peripelvic cyst, left with hypertension;

Obstructive sleep apnea; bilateral plantar fasciitis with calcaneal spurs; bilateral [A]chilles

tendonitis and left foot strain; Traumatic Brain Injury with scar; Degenerative disc disease and

strain Cervical spine C3-4; Bilateral [A]chilles tendonitis; Left foot strain; Anxiety Disorder,

[not otherwise specified]; [post traumatic stress disorder]; and Bipolar disorder, mixed, rapid

cycling." (Administrative Record [11] at 92; 101; 147-48).  After the agency denied Plaintiff's

claim, an Administrative Law Judge ("ALJ") conducted a hearing, and on August 27, 2020, the

ALJ issued a decision finding that Plaintiff was not disabled. ([11] at 18-30).  Plaintiff then

appealed the ALJ's decision to the Appeals Council.  On October 16, 2020, the Appeals Council

denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the

Commissioner. ([11] at 8-11).  Plaintiff now seeks judicial review in this Court under 42 U.S.C.

§ 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In his August 27, 2020, decision, the ALJ applied the five-step sequential analysis set

forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled.  At step one,

the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1,

2014, the alleged disability onset date.  At step two, the ALJ found that Plaintiff had the

following severe impairments: obesity, degenerative disc disease of the lumbar and cervical

spine, bipolar disorder, anxiety, depression, diabetes and hypertension.  At step three, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. ([11] at 20-21).

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.92.  The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC") [2] to perform light work as defined in 20 C.F.R. 404.1567(b), [3] with the following exceptions:

> the claimant has the ability to lift/carry twenty pounds occasionally and ten pounds frequently.  He can sit for six hours in an eight-hour workday, stand for six hours in an eight-hour workday and walk for six hours in an eight-hour workday.  He can push/pull to the amounts given for lift/carry.  He can operate foot controls with the left foot frequently.  The claimant can climb ramps and stairs occasionally.  He can occasionally climb ladders, but never ropes or scaffolds.  He can frequently balance and stoop.  He can occasionally kneel, crouch and crawl.  The claimant is able to perform simple routine repetitive tasks but not at production rate pace, such as assembly line work.  He is able to perform simple work-related decisions.  He can interact with supervisors and coworkers occasionally.  He can work in proximity to others but would work alone, not on a team.  He should work with objects, not people.  He is not able to interact with the public.

([11] at 23).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, however, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform.  Accordingly, the ALJ determined that Plaintiff was not disabled. ([11] at 28-30).

---

[2] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b).

**STANDARD OF REVIEW**

This Court's review of the Commissioner's decision is limited to determining whether

there is substantial evidence to support the Commissioner's findings and whether the correct

legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382

(5th Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).  To be substantial, the evidence "must do

more than create a suspicion of the existence of the fact to be established."  *Id*.

However, "[a] finding of no substantial evidence is appropriate only if no credible

evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704

(5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the

Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990).

A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the

Commissioner's, "even if the evidence preponderates against" the Commissioner's decision.

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  If the decision is supported by substantial

evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617.  Moreover,

"'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial

rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)

(quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

**ANALYSIS**

Plaintiff presents four grounds for relief: (1) the ALJ erred by failing to consider whether

Plaintiff's traumatic brain injury and neurocognitive disorder were medically determinable

impairments; (2) the ALJ erred by failing to consider whether Plaintiff's traumatic brain injury

and neurocognitive disorder were severe impairments; (3) the ALJ erred by failing to consider

whether Plaintiff's traumatic brain injury and neurocognitive disorder met Listing 12.02; and (4)

the ALJ erred by failing to properly consider the Paragraph C criteria for Listings 12.04 and

12.06.

**Issues 1 and 2: Traumatic Brain Injury and Neurocognitive Disorder**

At step two of the sequential analysis, an ALJ determines whether the claimant has a

medically determinable impairment that is severe.  A medically determinable impairment results

from "anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." *Randall v. Astrue*, 570 F.3d

651, 657 (5th Cir. 2009).  An impairment is "severe" if it significantly limits a claimant's

physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).  An impairment is

not severe "if it is a slight abnormality having such minimal effect on the individual that it would

not be expected to interfere with the individual's ability to work, irrespective of age, education or

work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  Plaintiff bears the

burden of proving that he suffered from a severe impairment. *See Giles v. Astrue*, 433 Fed.

Appx. 241, 246 (5th Cir. 2011).

As previously mentioned, the ALJ found that Plaintiff had the following severe

impairments: obesity, degenerative disc disease of the lumbar and cervical spine, bipolar

disorder, anxiety, depression, diabetes and hypertension.  The ALJ found that another medically

determinable impairment—osteoarthritis in his left knee—was not severe. ([11] at 21).  Plaintiff

argues that the ALJ erred by failing to consider whether his traumatic brain injury ("TBI") and

neurocognitive disorder were medically determinable impairments and whether these

impairments were severe.

Plaintiff refers the Court to two medical records: a "Psychiatric/Psychological Impairment Questionnaire" completed by Dr. Michel Fairon on May 31, 2019 and notes from a neuropsychological evaluation performed by Dr. Troy Stettler in November of 2014. ([11] at 788-98; 874-78). In the questionnaire, Dr. Fairon noted that Plaintiff suffered a "mild TBI" in 1997. ([11] at 877). Dr. Fairon also noted an MRI from March 9, 2011, which showed a "possible post TBI encephalomalacia" and an MRI from September 18, 2012, which showed a benign frontal arachnoid cyst. ([11] at 877).

According to Dr. Stettler's records, he administered several neuropsychological tests and determined that Plaintiff had deficiencies in simple attention and working memory, aspects of language, aspects of visuospatial skills, verbal and nonverbal learning and memory, and aspects of executive functioning. ([11] at 793-94). Dr. Stettler determined that the Plaintiff's depression and anxiety had a significant impact on his cognition, but noted that these impairments alone did not account for all of Plaintiff's impaired performance. Dr. Stetter theorized that low testosterone, an undiagnosed nonverbal learning disorder, and/or sleep apnea[4] may have affected Plaintiff's cognition. ([11] at 794-95). Dr. Stettler also noted Plaintiff's "remote history of mild TBI" and the MRIs from 2011 and 2012. ([11] at 789-90). However, he determined that given the mild nature of the TBI and Plaintiff's recovery, "it is less likely that the above noted deficits are related to [Plaintiff's] head injury." ([11] at 795).

Dr. Stettler's diagnostic impressions included major depressive disorder, anxiety disorder, and "mild neurocognitive disorder, due to multiple etiologies." ([11] at 795). But, he found that if Plaintiff can better control or eliminate the etiological factors, such as low testosterone and sleep apnea, his "cognitive profile will likely show improvement." ([11] at 795).

---

[4] Dr. Stetter noted that Plaintiff was only using his CPAP three or four nights a week.

As Plaintiff points out, the ALJ did not list a TBI or neurocognitive disorder among the impairments he considered at step two. Plaintiff argues that the ALJ's failure to list these alleged impairments or assess their severity constitutes error and that either of these failures "standing alone" warrants reversal. To the contrary, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler*, 501 F.3d at 448. Procedural errors will "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, even if the ALJ erred by failing to specifically mention the "remote," "mild" TBI and "mild neurocognitive disorder, due to multiple etiologies," the error was harmless. The ALJ considered the medical records and symptoms associated with these alleged impairments. The ALJ specifically discussed the deficiencies identified by Dr. Stettler, including deficits "in simple attention and working memory, verbal fluency, aspects of visuospatial skills, verbal learning and memory, nonverbal learning and memory and aspects of executive functioning." ([11] at 25). The ALJ discussed Dr. Fairon's findings concerning Plaintiff's mental functioning. ([11] at 27).

Additionally, the ALJ discussed and considered a psychological evaluation performed by Dr. William Chalstorm on August 25, 2015. Dr. Chalstorm found an "unspecified mild neurocognitive disorder" based on Plaintiff's scores on the Wechsler Memory Scale-IV ("WMS-IV") test. ([11] at 313). Plaintiff specifically considered Plaintiff's results from the WMS-IV test. ([11] at 25). Plaintiff also discussed Plaintiff's subjective complaints, his mood, and the effects of medications. ([11] at 22; 25-26).

After considering Plaintiff's medical records and the symptoms of record, the ALJ determined that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record as a whole. The ALJ stated: "The records suggest that the claimant's mental impairments are generally well-managed with conservative measures. There is no evidence that he has required inpatient hospitalization or that he suffered episodes of decompensation. There is no documentation of psychotic symptoms, hallucinations or suicidal ideations . . . [and] mental status evaluations are typically benign, stating that the claimant's mood was good or euthymic." ([11] at 26).

Nevertheless, the ALJ found that certain limitations should be assigned based on Plaintiff's mental functioning. Noting Plaintiff's symptoms, including his deficiencies in interacting with others, his problems with memory and concentration, and his anxiety and anger, the ALJ found Plaintiff "is able to perform simple routine repetitive tasks but not at production rate pace, such as assembly line work[;] . . . is able to perform simple work-related decisions[;] . . . can interact with supervisors and coworkers occasionally[;] . . . can work in proximity to others but would work alone, not on a team[;] . . . should work with objects, not people[; and] is not able to interact with the public." ([11] at 23; 26-27).

The ALJ considered Plaintiff's mental functioning and limitations regardless of whether they resulted from a TBI, neurocognitive disorder, or otherwise. Diagnosis does not equal disability, and Plaintiff does not identify any additional limitations that these impairments would cause. *See Nacol v. Colvin*, 2015 WL 9916724, at *3 (S.D. Miss. Dec. 11, 2015). Plaintiff has not shown, nor does the record indicate, that the ALJ's failure to list these impairments prejudiced Plaintiff's substantive rights. *See Dollins v. Astrue*, 2009 WL 1542466, at 8 *6 (N.D. Tex. June 2, 2009). Plaintiff has not shown that had the ALJ specifically listed the TBI and

neurocognitive disorder at step two, it might have led to a different outcome. *See Coleman v. Colvin*, 2013 WL 4007640, at *8 (N.D. Tex. Aug. 6, 2013).

**Issue 3: Listing 12.02**

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. ([11] at 20-21). Considering Plaintiff's mental impairments, the ALJ determined that they did not meet or medically equal the criteria of Listing 12.04 (depressive, bipolar, and related disorders) or Listing 12.06 (anxiety and obsessive-compulsive disorders). Plaintiff argues that the ALJ erred by failing to consider whether Plaintiff's TBI and neurocognitive disorder met or equaled yet another Listing—Listing 12.02 (neurocognitive disorders).

As Plaintiff acknowledges, however, even if the ALJ should have considered Listing 12.02, remand is not required unless Plaintiff can show prejudice. *See Mays*, 837 F.2d at 1364. To show prejudice, Plaintiff must demonstrate that his impairments satisfied Listing 12.02. *See Audler*, 501 F.3d at 449. The burden of proof to meet a listing is "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet Listing 12.02, a claimant must show he has a neurocognitive disorder (such as major neurocognitive disorder, dementia of the Alzheimer type, vascular dementia, dementia due to a medical condition, or substance-induced cognitive disorder) which is characterized by a clinically significant decline in cognitive functioning. *See* 20 C.F.R. Part 404, Subpart P, App. 1, §§ 12.02 and 12.00(B)(1). A claimant must also show:

A.  Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas:
   1.  Complex attention;
   2.  Executive function;
   3.  Learning and memory;
   4.  Language;
   5.  Perceptual-motor; or
   6.  Social cognition.

AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
   1.  Understand, remember, or apply information.
   2.  Interact with others.
   3.  Concentrate, persist, or maintain pace.
   4.  Adapt or manage oneself.

OR

C.  Your mental disorder in this listing category is 'serious and persistent;' that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
   1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
   2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.02 (internal citations omitted).

Despite the exacting nature of the Listings, Plaintiff argues that his mild neurocognitive disorder and his TBI (which was described as mild and from which he had recovered) meet Listing 12.02, Paragraphs A and C.[5]  Plaintiff points to Dr. Stettler's findings that Plaintiff had deficiencies in simple attention and working memory, aspects of language, aspects of visuospatial skills, verbal and nonverbal learning and memory, and aspects of executive functioning. ([11] at 793-94).  Plaintiff also notes Dr. Stettler's finding that "there has been some

---

[5] According to Plaintiff, he does not address Paragraph B "because the ALJ considered the Paragraph B criteria with some reference to medical records." ([15] at 19, n.1).

cognitive decline since prior testing." ([11] at 796).  Plaintiff argues that this finding satisfies Paragraph A, but Paragraph A requires "significant," not some, cognitive decline.

The record does not support a finding of significant cognitive decline or a finding that Plaintiff's TBI or neurocognitive disorder was a serious and persistent mental disorder.  Dr. Stettler specifically determined that Plaintiff's deficits likely were not related to his TBI considering its mild nature and Plaintiff's recovery. ([11] at 795).  Dr. Stettler also determined that Plaintiff likely was not experiencing a neurodegenerative process and that controlling his etiological factors, such as low testosterone levels and sleep apnea, would improve his cognition. ([11] at 795).

In his psychological evaluation of Plaintiff, Dr. Chalstorm determined that Plaintiff "would be able to complete simple repetitive tasks." ([11] at 314).  The ALJ found Dr. Chalstorm's opinion persuasive, noting that it is supported by the objective medical evidence. ([11] at 27).  The ALJ considered the lack of inpatient hospitalizations or episodes of decompensation and Plaintiff's benign mental status evaluations. ([11] at 26; 365; 597).  The ALJ noted that Plaintiff's impairments were "generally well-managed with conservative measures," even though there were instances of medication noncompliance. ([11] at 26).

The burden of proof rest with the claimant at step three, and Plaintiff has not shown that his impairments met the exacting criteria of Listing 12.02.  Accordingly, even if the Court were to assume the ALJ erred by nor expressly discussing Listing 12.02 at step three, the error was harmless.

**Issue 4: Listings 12.04 and 12.06**

As previously mentioned, the ALJ considered Plaintiff's mental impairments at step three and determined that they did not meet or equal the criteria of Listing 12.04 (depressive, bipolar,

and related disorders) or Listing 12.06 (anxiety and obsessive-compulsive disorders).  For both

Listings, a claimant must show that he has one of the disorders (each with specific

characteristics) found in Paragraph A.  For Listing 12.04, a claimant must show he has a

depressive disorder or bipolar disorder.  For Listing 12.06, a claimant must show he has anxiety

disorder, panic disorder, agoraphobia, or obsessive-compulsive disorder.  Listings 12.04 and

12.06 also require the claimant to meet the criteria of either Paragraph B or Paragraph C.  These

Paragraphs are identical for Listings 12.04 and 12.06.[6]  Plaintiff argues that the ALJ failed to

properly consider the Paragraph C criteria:

> Your mental disorder in this listing category is 'serious and persistent;' that is,
> you have a medically documented history of the existence of the disorder over a
> period of at least 2 years, and there is evidence of both:
> 1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly
>     structured setting(s) that is ongoing and that diminishes the symptoms and
>     signs of your mental disorder; and
> 2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in
>     your environment or to demands that are not already part of your daily life.

*See* 20 C.F.R. Part 404, Subpart P, App. 1, §§ 12.04 and 12.06 (internal citations omitted).

The ALJ addressed Paragraph C and concluded that the evidence failed to establish the

presence of the Paragraph C criteria. ([11] at 23).  Plaintiff argues that the ALJ's assessment was

"a mere boilerplate rejection" of the Paragraph C criteria, without "a single reference to a

medical record or piece of evidence."  According to Plaintiff, the ALJ's failure to provide any

factual support for his determination requires remand.

The ALJ provided conclusory findings at step three, but that does not end this Court's

consideration of this action.  An ALJ's analysis and findings at other steps of the sequential

process may provide a basis for upholding a conclusory step three finding.  An ALJ's discussion

---

[6] These Paragraphs are also identical in Listing 12.02.

of a claimant's impairments and the medical evidence after step three may provide the necessary detail to review the step three finding in a meaningful way. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015); *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005); *Reynolds v. Astrue*, 2010 WL 583918, at *6 (N.D. Miss. Feb. 16, 2010); *Coscarelli v. Saul*, 2021 WL 8053621, at *8, n.3 (W.D. Tex. Jan. 29, 2021); *Smith v. Berryhill*, 2019 WL 3557586, at *6 (S.D. Tex. July 11, 2019).

Here, the ALJ's specifically discussed Plaintiff's medical treatment and functioning in the RFC analysis, providing the necessary detail to review the step three findings, and substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet the Paragraph C criteria of Listings12.04 and 12.06.  The ALJ noted that Plaintiff did not need inpatient hospitalization or suffer episodes of decompensation, psychotic symptoms, hallucinations, or suicidal ideations. ([11] at 26).  The ALJ noted Plaintiff's benign mental status evaluations and conservative mental health treatment. ([11] at 26).  The ALJ considered Dr. Chalstorm's determination that Plaintiff remained capable of completing simple repetitive tasks. ([11] at 27; 314).

The ALJ discussed Plaintiff's issues with anger, noting his "road rage" and the report that he "pulled a gun during a confrontation." ([11] at 25).  He noted Plaintiff's anxiety concerning a home sale. ([11] at 25).  The ALJ found that, despite these issues, Plaintiff's mental status evaluations were typically benign, with reports that Plaintiff was "good" and his mood was "euthymic" on "normal" ([11] at 26-27; 365; 597; [12] at 123).

Plaintiff has failed to establish that the ALJ's step three determination was improper or that no credible evidence supports the ALJ's decision.  Substantial evidence supports the ALJ's determination at step three. *See Whitehead v. Colvin*, 820 F.3d 776, 780-81 (5th Cir. 2016).

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 19th day of July, 2022.

s/ Michael T. Parker
United States Magistrate Judge